RECEIVED
AUG 2 4 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DII, L.L.C. | CIVIL ACTION NO. 06-2275 |
| VERSUS | JUDGE DOHERTY |
| CROWN PIPE SHOPS, INC. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING ON MOTION TO DISMISS

Pending before the Court is a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 7], filed by defendant, Crown Pipe Shops, Inc. (CPS). The motion is opposed by plaintiff, DII, LLC (DII). For the following reasons the motion to dismiss is DENIED.

## BACKGROUND

A review of the pleadings and submissions by the parties reveals the following uncontested facts. On October 24, 2006, DII, a Louisiana Limited Liability Company, filed a complaint in Louisiana state court against defendant, CPS, a Texas corporation. DII alleged that, on or about September 2005, Hurricane Rita made landfall at or near the Texas/Louisiana border and caused extensive property damage to CPS's office and operations facility in southeast Texas. Subsequently, DII alleged CPS, individually and or through authorized agents, representatives, officers, and employees maintained an open account with DII to provide buildings, furniture, and other equipment on a rental basis in addition to associated freight, hauling, installation, removal, and damages to rented items. DII alleged it incurred charges of approximately $312,481.99. DII further contended CPS refused to pay the unpaid balance due to DII, which sought in its petition damages and an

attorney fee award pursuant to La. R.S. 9:2781.[1] [Doc. 1]. Defendant removed this matter to the United States District Court for the Western District on November 30, 2006. [Doc. 3].

Thereafter, CPS filed a Motion to Dismiss for Lack of Personal Jurisdiction [Doc. 7], arguing CPS lacks the sufficient "minimum contacts" justifying this Court's exercise of personal jurisdiction over CPS. Attached with the Motion to Dismiss is an affidavit of John Reidmuller, who attests he is the president of CPS, which is organized under the laws of Texas and maintains its principal place of business in Beaumont, Texas. According to Mr. Reidmuller, CPS has no other locations or satellite operations outside of Beaumont/Nederland, Texas, and CPS does not conduct business in the State of Louisiana. Mr. Reidmuller further declares: (1) CPS makes no efforts to advertise, market, or solicit business from within the State of Louisiana; (2) CPS has not entered into any Louisiana contractual obligations while in the State of Louisiana or under any agreement subject to the laws of the State of Louisiana; (3) CPS has never consented to or acquiesced to the jurisdiction of any State or Federal Court inside the State of Louisiana; and (4) CPS has not entered any contracts with DII.

Subsequently, after the parties engaged in limited discovery to determine what contacts, if any, CPS maintains in Louisiana, DII filed an opposition to the Motion to Dismiss [Doc. 18], arguing

---

[1] La. R.S. 9:2781 provides, in part:

When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section. If the claimant and his attorney have expressly agreed that the debtor shall be liable for the claimant's attorney fees in a fixed or determinable amount, the claimant is entitled to that amount when judgment on the claim is rendered in favor of the claimant. Receipt of written demand by the person is not required.

CPS maintains sufficient contacts with Louisiana, that this Court may exercise personal jurisdiction over CPS. Specifically, DII argues CPS maintains continuous, substantial and systematic relationship with Louisiana because: (1) CPS, a pipe manufacturer for the "Gulf Coast," has provided products used in at least three Louisiana facilities over the course of CPS's business; (2) CPS provides warranties for its products and understands that any property damage or personal injury casualty as a result of a defective product could subject CPS to the laws of Louisiana; (3) CPS has and continues to submit bids to provide products for Louisiana projects on an ongoing basis and does not limit itself from bidding on those projects; CPS's general activities in Louisiana are not limited to the products it provides, but also extends to benefits it receives from contracts and activities with residents of Louisiana; (4) CPS has purposely availed itself and benefitted from the lower cost advantages provided by a Louisiana insurance brokerage company whose employee agent resides in Louisiana; (5) Mr. Reidmuller understands the purpose and significance of insurance is an integral part of CPS's business which would not continue without such insurance; (6) Mr. Reidmuller admits the major consideration for the placement of all of his insurance coverages through Mr. Gage and Gallagher in Louisiana was the lower cost of insurance Mr. Gage and Gallagher could provide; (7) CPS contracted with Mr. Gage and Gallagher over four separate policy years; (8) the agency contract between CPS and Gallagher specifically cites LS. R.S. 23:627(B)(2)(a), which allows the agent to receive reimbursement for expenses and fees on a separately itemized invoice; (9) insurance agents and brokers are heavily regulated by Louisiana, where CPS could avail itself of the laws and courts of Louisiana if aggrieved by the agency relationship; (10) CPS received and accepted assistance from Mr. Gage and Gallagher to get CPS's business back in operation following Hurricane Katrina; (11) CPS communicated with Gallagher and Mr. Gage on a regular and continuous basis by telephone,

correspondence, e-mails and other methods of communication; (12) most, if not all, of the invoices pertaining to CPS's losses following Hurricane Katrina were forwarded to or processed by Gallagher's Lake Charles office; (13) Gallagher and Gage were an integral part of CPS's recovery in the aftermath of Hurricane Rita;(14) the furniture, trailers and other services provided by DII to CPS contributed to CPS's ability to function following Hurricane Katrina; and (15) CPS's offices are located only 60 miles from Louisiana.

Attached with DII's opposition memorandum are: (1) deposition testimony of Mr. Reidmuller; (2) an affidavit of Billy Gage, an insurance broker at the Lake Charles, Louisiana offices of Arthur J. Gallagher Risk Management Services (Gallagher); (3) CPS Facsimile Transmittal Cover Sheets between Mr. Reidmuller and Mr. Gage from December 2005 through July 2006 regarding invoices sent from DII to CPS; (4) a "Fee Agreement" contract between CPS and Arthur J. Gallagher & Co.; (5) a Louisiana Secretary of State Detailed Record of Arthur J. Gallagher of Louisiana; (6) Gallagher Claim Notes; (7) Gallagher Risk File Activities; (8) a cover page from a "Worker's Compensation Policy," apparently issued by the American Interstate Insurance Company of Texas, whose business address is 2301 Highway 190 West, DeRidder, Louisiana 70634; and (9) a copy of an original Texas state court petition and Notice of Removal in a matter filed by CPS against Westport Insurance Corporation and Gallagher. [Doc. 18].

Following the submission of DII's opposition memorandum and attachments, CPS filed no reply brief or motion for leave to file a response to DII's submissions. These matters are now before the Court.

## LAW

A.  **Standard of Review**

Where, as here, the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff bears the burden of proving that jurisdiction exists; however, plaintiff need only make a *prima facie* case that jurisdiction is proper. *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006)(reversing a trial court decision to dismiss for lack of personal jurisdiction); *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir.2006) (citing *Quick Technologies, Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir.2002)). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. *Paz supra* at 812. Rather, the district court may consider the contents of the record at the time of the motion, including affidavits ..." *Id;* accord *Luv n' care, supra* at 469. However, in determining whether a *prima facie* case for personal jurisdiction exists on a motion to dismiss, "uncontroverted allegations in the plaintiff's complaint must be taken as true." *Id.* See also *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir.2005); *Kelly v. Syria Shell Petroleum Dev., B.V.*, 213 F.3d 841, 854 (5th Cir.2000). Moreover, the Court must resolve in favor of the plaintiff any factual conflicts. *J.R. Stripling v. Jordan Production Co., L.L.C..* 234 F.3d 863, 869 (5th Cir. 2000); accord *Luv n' care*, 438 F.3d at 469 ("This court must resolve all undisputed facts submitted by the plaintiff, as well as all facts contested in the affidavits, in favor of jurisdiction").

B.  **Substantive Law**

   1.  **Necessary requirements to exercise personal jurisdiction over a nonresident defendant.**

A federal court sitting in diversity must satisfy two requirements to exercise personal jurisdiction over a nonresident defendant. First, the forum state's long-arm statute must confer personal jurisdiction. Second, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006). The Louisiana long-arm statute "extends jurisdiction over nonresidents to the extent allowed by federal due process." *ICEE Distrib., Inc. v. J & J Snack Foods*, 325 F.3d 586, 591 (5th Cir.2003).[2] Thus, this Court need only examine whether the exercise of jurisdiction over CPS in Louisiana would offend due process. *Id.*

---

[2] The Louisiana Long-Arm Statute provides, in pertinent part:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly *or by an agent*, as to a cause of action arising from any one of the following activities performed by the nonresident:

(1) Transacting any business in this state.

(2) Contracting to supply services or things in this state.

(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.

(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.

\* \* \*

B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

La. R.S. 13:3201 (West 2007)(emphasis added).

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984). The "constitutional touchstone" of the inquiry to determine if personal jurisdiction can be exercised is whether the defendant "purposefully established minimum contacts in the forum State." *Seiferth*, 472 F.3d at 269-270 (citing *Asahi Metal Ind. Co. v. Super. Ct.*, 480 U.S. 102, 108-09 (1987); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *Burger King*, 471 U.S. at 472 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945); *Shaffer v. Heitner*, 433 U.S. 186, 218, (1977); and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

Personal jurisdiction can be general or specific. If a defendant's contacts with the forum state are "continuous and systematic," a court may exercise general jurisdiction over any action brought against that defendant, regardless of whether the action is related to the forum contacts. *Id.* (citing *Helicopteros*, 466 U.S. at 414-15). If a defendant has relatively few contacts, a court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Id.* (citing *Helicopteros*, 466 U.S. at 414-15 & n. 8).

The Fifth Circuit follows a three-step analysis for specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state *or purposefully availed itself of the privileges of conducting activities there*; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related

contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Id.* (citing *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374 (5th Cir.2002); *Burger King*, 471 U.S. at 474. If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable, based on five factors: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Id.* at 271, 276 (citing *Nuovo Pignone, SpA*, 310 F.3d at 382; and *Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 324 (5th Cir.1996)).

## DISCUSSION

As noted above, the exercise of jurisdiction must not exceed the boundaries of the Due Process Clause of the Fourteenth Amendment, and the "constitutional touchstone" of the inquiry to determine if personal jurisdiction can be exercised is whether CPS "purposefully established minimum contacts" in Louisiana. If CPS's contacts with Louisiana are "continuous and systematic," this Court may exercise general jurisdiction over any action brought against CPS, regardless of whether the action is related to the forum contacts. Otherwise, if CPS has relatively few contacts, this Court may still exercise specific jurisdiction "in a suit arising out of or related to" CPS's contacts with Louisiana. Additionally, DII need only make a *prima facie* case that jurisdiction is proper.

### A. General Jurisdiction

CPS argues this Court lacks general jurisdiction because CPS lacks "continuous and systematic" contacts with Louisiana. Specifically, CPS argues it is clearly not engaged in business

activities within the State of Louisiana nor with companies operating within Louisiana borders. CPS further maintains it has not entered into any Louisiana contractual obligations while in Louisiana or under any agreement subject to the laws of the State of Louisiana. CPS concludes it cannot be said that its relation to Louisiana amounts to any contacts, much less "continuous and systematic" as to ever anticipate being brought to court in Louisiana.

However, in contrast to the position taken by CPS, a review of Mr. Reidmuller's deposition reveals CPS manufactures product that is used for "refineries, chemical industry, offshore, [and] paper mills" and that CPS fabricated product for use in Geismar, Louisiana, Lake Charles, Louisiana, and Sulphur, Louisiana through at least 1999. Moreover, Mr. Reidmuller indicates the CPS product was fabricated at CPS's Beaumont/Nederland facility and shipped to the Louisiana destinations. Mr. Reidmuller states CPS bid on "Louisiana contracts," and that "most of the projects in Louisiana end up at Sunland or IPS, which are both in Baton Rouge."[3] Mr. Reidmuller further notes CPS is not a company that actively avoids providing goods and services in Louisiana. Mr. Reidmuller also observes CPS product warranties extend to Louisiana projects and that CPS could be subject to the laws of the State of Louisiana if the product is defective or personal injury results. (Reidmuller's Deposition, pp. 12, 24-27, 38- 46, 117).

Additionally, Mr. Reidmuller acknowledges CPS would not operate without insurance, which is an "integral part" of CPS's business. For CPS's insurance, Mr. Reidmuller notes insurance is

---

[3] It is noted that Mr. Reidmuller indicated that CPS has never bid directly to a Louisiana entity; rather, CPS directly bid to parties in Texas or outside Louisiana, and the work CPS fabricated would have been fabricated in Texas then shipped to Louisiana. (Mr. Reidmuller's Deposition, pp. 38-42). Nevertheless, Mr. Reidmuller stated CPS knows the location of the project where CPS product will be used "the majority of times" and that CPS would never turn down a job because it is in Louisiana, because "that's what we're in business for." (Mr. Reidmuller's Deposition, pp. 39, 42-43)

procured through Mr. Gage and Gallagher in Lake Charles. Mr. Reidmuller understood Mr. Gage and Gallagher were from Louisiana when he executed CPS insurance contracts with Gallagher. He advises that CPS selected Mr. Gage and Gallagher because of their competitive rates, noting cost was "the major consideration" of his decision to rely on Gallagher for CPS's insurance needs. Mr. Reidmuller indicates CPS notified Gallagher's Louisiana office when it made claims under its insurance policies, and that the personnel in Gallagher's Louisiana office serviced his claims. Likewise, Mr. Reidmuller indicates CPS's workers' compensation insurance is provided through American Interstate Insurance Company of Texas out of its office in DeRidder, Louisiana. (Mr Reidmuller's Deposition, pp. 50-52, 65, 68-73).

With respect to events following Hurricane Rita, Mr. Reidmuller indicates he had discussions with Mr. Gage about trailers and furniture CPS needed. Mr. Reidmuller did not care where the equipment came from, he just needed to get CPS "up and running." Mr. Reidmuller was aware DII provided the equipment in November 2006, when he received DII invoices, and he was also aware DII was a Louisiana company. From the time Mr. Reidmuller first received DII equipment through the time he was invoiced, CPS experienced no problems with the DII equipment. Mr. Gage serviced CPS's claims following Hurricane Rita, and as CPS received the DII invoices, CPS would fax the invoices to Mr. Gage. Mr. Reidmuller does not consider CPS's insurance transactions with Louisiana as "conducting business" because "I make no income off of it." (Mr Reidmuller's Deposition, pp. 91-93, 103-105, 107, 110-111).

The affidavit of Mr. Gage reveals: (1) Mr. Gage is an insurance broker subject to the laws of the State of Louisiana and subject to the regulatory and statutory laws of the State of Louisiana; (2) the business relationship between CPS and Gallagher began in March 2003, and continued

thereafter through 2007; (3) during the period of time between 2003 and 2007, CPS paid premiums to Gallagher's Louisiana office; (4) during the period of time between 2003 and 2007, CPS communicated with Mr. Gage "several times a month" via telephone, e-mail, and facsimile correspondence; (5) CPS's workers' compensation insurance was provided through an office in DeRidder, Louisiana; (6) following Hurricane Rita, Mr. Gage communicated with CPS on "almost a daily basis;" (7) as a result of damage from Hurricane Rita, CPS expressed a need for temporary office trailers while its office building was being re-built; (8) Mr. Gage placed a phone call to DII in Louisiana "to assist [CPS] in the procurement of temporary office trailers;" and (9) Mr. Gage was present in Louisiana at a meeting between DII and CPS at DII's Louisiana offices at which time the parties attempted to negotiate a lower price for the services provided by DII to CPS. Mr. Gage's affidavit testimony is uncontroverted.

In consideration of the foregoing testimony, it is clear that CPS has enjoyed a history of business dealings in Louisiana. CPS clearly manufactured its product in Texas for sales and use in Louisiana facilities through at least 1999. Although it is suggested that there is a distinction between direct and indirect bidding for Louisiana jobs, there is no dispute CPS understood its products would end up in Louisiana. Likewise, there is no dispute the product was shipped from CPS directly to the Louisiana facilities. Moreover, there is no dispute CPS enjoys the benefit of advantageous pricing on its insurance, which is "integral" to the ongoing operations of CPS and which is provided through Gallagher's Louisiana office. Although CPS argues it maintains no contacts, it is clear from the uncontroverted testimony of Mr. Gage that CPS has maintained "continuous and systematic" contacts "several times a month" with the Gallagher office in Louisiana since 2003. Following Hurricane Rita, CPS communicated with the Louisiana office, which serviced

CPS's claims, on "almost a daily basis."

Additionally, there is no dispute CPS needed trailers and equipment to get "up and running" following Hurricane Rita. Likewise, there is no dispute Mr. Gage and CPS discussed CPS's need for the equipment and that Mr. Gage contacted DII on behalf of CPS to procure the equipment for CPS, which "did not care where it came from."[4] CPS was aware the DII equipment was being provided by a Louisiana company from its Louisiana office as early as November 2005, and possibly sooner, and CPS never objected to the use of the DII equipment from Louisiana. Following November 2005, CPS possessed and enjoyed the use of the DII equipment continuously through approximately July 2006.[5]

Lastly, CPS contends it lacks sufficient contacts with Louisiana that it could not have "fair notice" or otherwise anticipate being haled to Louisiana courts. CPS's argument is undermined by Mr. Reidmuller's clear indication that he understood CPS could be subject to the laws of Louisiana.[6]

---

[4] There is no argument that Mr. Gage was not an agent acting on behalf of CPS when he contacted DII for equipment to be used by CPS following Hurricane Katrina; however, it would appear the uncontroverted affidavit testimony of Mr. Gage would suggest Mr. Gage was in fact acting on CPS's behalf. Resolving all factual conflicts in favor of DII, for the purposes of this motion, and in the absence of any contrary evidence, this Court assumes Mr. Gage was acting on behalf of CPS when he procured the DII equipment for CPS. See generally, *J.R. Stripling v. Jordan Production Company, L.L.C.*, 234 F.3d 863 (5th Cir 2000)("we believe this evidence is sufficient for a prima facie case that Guardian entered into a contract through its agent to be performed in whole or in part in Mississippi, thus placing Guardian within the reach of the state's long-arm statute").

[5] Although Mr. Reidmuller believes CPS conducts no business within Louisiana, despite his continuous and systematic contacts with his Louisiana insurers and with DII, which provided necessary equipment to CPS, this Court has been presented with no jurisprudential or statutory authority supporting his belief. This Court cannot ignore the value of lower costs of insurance enjoyed by CPS, which maintained "continuous and systematic" contacts with Louisiana, or the value of getting "up and running" following Hurricane Rita through "continuous and systematic" contacts with DII.

[6] There is no argument, nor any evidence before this Court, that there is a distinction between anticipating litigation for "tort" claims and anticipating litigation for "contract' claims in the context of personal jurisdiction considerations under the Due Process clause. As the parties have not briefed this possible distinction, this Court will assume for the purposes of this motion that the distinction is irrelevant.

12

Thus, for the purposes of this motion, based on a review of the uncontested facts, this Court finds DII has presented a *prima facie* case that jurisdiction is proper, and CPS's Motion to Dismiss is hereby **DENIED**.

**B.    Specific Jurisdiction**

Alternatively, as noted above, this Court follows a three-step analysis for specific jurisdiction: (1) whether CPS has minimum contacts with Louisiana, *i.e.*, whether CPS purposely directed its activities toward Louisiana or purposefully availed itself of the privileges of conducting activities there; (2) whether DII's cause of action arises out of or results from CPS's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. If DII successfully satisfies the first two prongs, the burden shifts to CPS to defeat jurisdiction by showing that its exercise would be unfair or unreasonable.

**1.    Whether CPS has minimum contacts with Louisiana, *i.e.*, whether CPS purposely directed its activities toward Louisiana or purposefully availed itself of the privileges of conducting activities there.**

Based on the record before the Court, there is no question CPS purposely directed its activities toward Louisiana. As noted above, CPS manufactures pipe which it clearly understood was used in Louisiana numerous times, regardless of direct or indirect bidding. Additionally, CPS continuously and systematically contacted Mr. Gage and Gallagher since 2003, when it communicated "several times a month" with Mr. Gage and Mr. Gallagher. As CPS was required to make claims, it contacted Mr. Gage and Gallagher to service its claims. Following Hurricane Rita's landfall, CPS communicated "almost daily" with Mr. Gage and Gallagher. CPS clearly expressed its need for equipment, regardless of origin, to get "up and running." As result of CPS's communications with Mr. Gage, DII was contacted by Mr. Gage, who procured the DII equipment

for CPS. DII unquestionably provided its equipment to CPS, and at some point, according to Mr. Gage's uncontroverted affidavit testimony, CPS attended a meeting at DII's office in Lafayette, Louisiana, to negotiate pricing. Thus, this Court finds CPS purposely directed its activities toward Louisiana.

### 2. Whether DII's cause of action arises out of or results from CPS's forum-related contacts.

There is no dispute CPS purposefully directed its activities toward Louisiana. As noted above, CPS continuously and systematically contacted Gallagher and Mr. Gage several times a month for CPS's insurance needs from 2003 until the landfall of Hurricane Rita, after which, CPS and Mr. Gage communicated "almost daily." During their communications, CPS clearly expressed its desire and need for trailers and equipment to get back "up and running." Based on the uncontroverted affidavit testimony of Mr. Gage, DII was contacted by Mr. Gage, who procured the trailers and equipment on behalf of CPS. The equipment was transported from Lafayette, Louisiana to CPS in Texas. Thereafter, CPS enjoyed the benefit of continuous contacts with DII in Louisiana through the ongoing and continuous use and possession of DII's equipment for many months after the hurricane. Despite the benefit of using the equipment, CPS allegedly refused to pay for the equipment, which prompted the underlying petition against DII by CPS.[7] Clearly, DII's petition arises out of or results from CPS's contacts with Louisiana through Mr. Gage and by way of ongoing contacts with DII following the installation of DII's equipment at CPS. Accordingly, this Court finds DII's cause of action arises out of or results from CPS's forum-related contacts. Therefore, DII has

---

[7] It is noted CPS argues there is no underlying contract between CPS and DII, despite the numerous undisputed invoices and the uncontroverted testimony that CPS negotiated pricing with DII in Lafayette, Louisiana. For the limited purposes of this motion to dismiss based on lack of personal jurisdiction, and based on the the limited evidence with which this Court has been presented, the existence of an underlying contract between the parties is not properly before the Court at this time.

14

demonstrated a prima facie case that jurisdiction is proper in this matter.

### 3. Whether the exercise of personal jurisdiction is fair and reasonable.

Having found DII successfully satisfied the first two prongs of the three-step analysis for specific jurisdiction, as discussed above, the burden shifts to CPS to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. The factors on which this Court relies are: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental social policies.

#### a. The burden on CPS

CPS argues the burden of defending a lawsuit in Louisiana "placed heavily" on CPS, a foreign corporation whose principle place of business is in Texas would be "tremendous." It is noted that there is no dispute CPS operates out of its Beaumont/Nederland office, which is only 60 miles from Louisiana. CPS argues this dispute centers on goods "rendered in Texas;" however, the goods were unquestionably provided by DII from DII's place of business in Lafayette, Louisiana. Although CPS argues CPS faces a heavy burden, there is no evidence before this Court establishing the costs of litigation in this matter are significantly greater in Beaumont than in Lafayette. This Court finds this factor is neutral.

#### b. The interests of Louisiana;

A review of CPS's Motion to Dismiss reveals no specific argument by CPS on this specific aspect of the inquiry. On the other hand DII argues the insurance industry is heavily regulated in the State of Louisiana, which supports a conclusion Louisiana maintains a substantial interest for

15

maintaining compliance with the regulatory process of its agents and brokers. This matter clearly involves Gallagher and Mr. Gage, who are subject to Louisiana's regulatory scheme and who played an integral role in the procurement of DII's equipment on behalf of DII, which apparently never got paid for its equipment. Additionally, CPS may conceivably seek remedies against Mr. Gage and Gallagher under Louisiana law, which, DII argues, further supports a conclusion the interests of Louisiana are greater than the interests of Texas. This Court finds the arguments made by DII are not without merit, and this Court finds the interests of Louisiana outweigh the interests of a different forum state.

        c.     **DII's interest in obtaining relief.**

CPS argues the DII's interest in receiving convenient and effective relief supports a conclusion that DII's claim must be resolved in another matter against other defendants apparently in *another state*. However, this Court finds insufficient support for the argument. This Court has not been presented with any facts related to the other matter to reach a conclusion DII's claim is better placed in a different forum. Without greater support for CPS's argument, this Court finds the argument is not persuasive. It is noted, however, that CPS acknowledges DII's interest is "not minimal." It is further noted that DII is proceeding against CPS based on allegations that CPS is liable for the non-payment of an open account pursuant to a specific Louisiana statute. Again, this Court has no way of knowing how DII's interests are better suited in another forum where an analogous statute may or may not exist. Based on the arguments presented, this Court concludes DII's interest in litigating this matter is greater in Louisiana than in another forum state.

        d.     **The interstate judicial system's interest in the most efficient resolution of controversies.**

It is noted that there is apparently a Texas suit filed by CPS against other defendants. The

matter was filed weeks after this matter was filed by DII, and this Court has been presented with insufficient information on which it can rely to conclude the interstate judicial system's interest in the most efficient resolution of controversies warrants a determination that DII must litigate this matter elsewhere. As noted above, DII is proceeding under a claim for an open account under Louisiana law. DII's claim would appear to be relatively straight-forward, and it would appear to involve different claims, different legal theories and different parties. Thus, this Court finds this factor is neutral.

  e. **The shared interests of the several states in furthering fundamental social policies.**

A review of CPS's Motion to Dismiss reveals no specific argument by CPS on this specific aspect of the inquiry; however, DII presents a seductive argument that "crucial Louisiana resources were provided virtually immediately after two devastating natural disasters," namely Hurricanes Katrina and Rita. DII further argues these resources were utilized by a Louisiana company and provided to a Texas corporation at a crucial time and to the potential detriment of other Louisiana entities who might have benefitted from the same resources. This Court is inclined to conclude the shared interests of the several states, namely the interest of the states' allocation of their resources following major disasters, warrants a determination that litigation of this matter is preferable in Louisiana than it is in Texas. However, this Court need not make this finding as a matter of law, as CPS has not provided this Court with sufficient argument on this point. This Court finds CPS has failed to carry its burden of proof on this issue.

matter was filed weeks after this matter was filed by DII, and this Court has been presented with insufficient information on which it can rely to conclude the interstate judicial system's interest in the most efficient resolution of controversies warrants a determination that DII must litigate this matter elsewhere. As noted above, DII is proceeding under a claim for an open account under Louisiana law. DII's claim would appear to be relatively straight-forward, and it would appear to involve different claims, different legal theories and different parties. Thus, this Court finds this factor is neutral.

  e. **The shared interests of the several states in furthering fundamental social policies.**

A review of CPS's Motion to Dismiss reveals no specific argument by CPS on this specific aspect of the inquiry; however, DII presents a seductive argument that "crucial Louisiana resources were provided virtually immediately after two devastating natural disasters," namely Hurricanes Katrina and Rita. DII further argues these resources were utilized by a Louisiana company and provided to a Texas corporation at a crucial time and to the potential detriment of other Louisiana entities who might have benefitted from the same resources. This Court is inclined to conclude the shared interests of the several states, namely the interest of the states' allocation of their resources following major disasters, warrants a determination that litigation of this matter is preferable in Louisiana than it is in Texas. However, this Court need not make this finding as a matter of law, as the parties have not presented sufficient briefing on this issue. Rather, this Court finds CPS has failed to carry its burden of proof establishing the exercise of jurisdiction is unfair or unreasonable in consideration of the shared interest of the several states in furthering fundamental social policies.

## CONCLUSION

In view of the foregoing discussion, this Court finds DII has established a *prima facie* case that jurisdiction is proper in this matter, and that CPS has failed to carry its burden of establishing the exercise of personal jurisdiction is unfair and unreasonable. Accordingly, CPS's Motion to Dismiss [Doc. 7], is hereby **DENIED**.

THUS DONE AND SIGNED this 24 day of August, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE